IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'26 FEB 10 PM2:29

|  |  |
|---|---|
| VINCENT LAMONT DUNBAR, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LT. LORETTA LAKANSE,[1] ) <br> ) <br> Defendant. ) <br> ) | Civil Action No.: 25-cv-1509-LKG <br><br> Dated: February 10, 2026 |

## MEMORANDUM OPINION

Pending before the Court is a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed on behalf of Defendant Lt. Loretta Lakanse (ECF No. 9) and self-represented Plaintiff Vincent Lamont Dunbar., Jr.'s Motion for Summary Judgment (ECF No. 15). Defendant Lakanse responded to Plaintiff's motion. ECF No. 16. No hearing is required. *See* Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the motions are denied without prejudice. Counsel shall be appointed to represent Plaintiff.

### I.  BACKGROUND

#### A. Plaintiff's Allegations

Plaintiff states that on April 12, 2025, while he was a pretrial detainee at the Montgomery County Correctional Facility, his cell was flooded. ECF No. 1 at 4. Defendant Lakanse came to his cell and when his door slot opened, he tried to get on one knee to explain what was going on but Defendant Lakanse sprayed him in the mouth with mace. *Id.* Defendant Lakanse deployed a second shot of spray into his "private area and left [him] in the cell for 10-15 minutes." *Id.* Plaintiff states that his throat was sore and swollen. *Id.* He claims that Defendant Lakanse failed to follow procedure and that he was not a threat given that he was in his cell. *Id.* Additionally, he states that Defendant Lakanse never told him, "to handcuff up" but instead just came to his cell and started to spray the chemical agent. *Id.* at 4-5. He seeks compensatory damages. *Id.* at 5.

---

[1] The Clerk shall amend the docket to reflect the full and complete name of Defendant.

In his motion for summary judgment, Plaintiff notes that the water to his cell was shut off and he was at his cell door to be handcuffed when Defendant sprayed him with the OC spray and then left him in his cell for a period of time. ECF No. 15 at 3; ECF No. 15-1 at 2; ECF No. 15-2 at 1-2. He denies that he was a threat to himself or others and notes he was "behind a secure door." ECF No. 15 at 3.

### B. Defendant's Motion

Defendant Lakanse moves for summary judgment or dismissal, arguing that Plaintiff fails to state a claim against her and she is otherwise entitled to summary judgment. ECF No. 9.

In a declaration accompany the motion to dismiss or for summary judgment, Defendant Lakanse avers that on April 12, 2025, Plaintiff was housed in cell A-1, the far left cell of the lower tier on the N1-1 housing unit. ECF No. 9-4, ¶¶ 3-4 (Lakanse Aff.). The N1-1 housing unit houses inmates who have been the subject of administrative action due to violating inmate rules. *Id.*, ¶ 5. Defendant Lakanse states, without any additional details, that Plaintiff's disciplinary history included assaultive behavior. *Id.*

On April 12, 2025, Pfc. Adedeji reported that Plaintiff repeatedly flushed his toilet, despite being directed to stop, which resulted in a flood on the lower tier of the unit. ECF No. 9-4, ¶ 6; ECF No. 9-6, ¶¶ 3, 4 (Adedeji Aff.). Defendant Lakanse responded to the unit with Sgt. Yeboah and observed that the bottom tier cells and day area were flooded with water. ECF No. 9-4, ¶ 7. Defendant Lakanse states that the "flooding presented a safety and hygiene issue that [needed to be] immediately addressed." *Id.* ¶ 8. Plaintiff was given orders to stop flushing and flooding his cell, but continued to do so, and the water to his cell was turned off. *Id.*, ¶ 9; ECF No. 9-6, ¶ 6.

Defendant Lakanse avers that in compliance with policies and procedures she ordered Plaintiff to come to his food slot to be handcuffed, explaining that inmates on the special management unit must be handcuffed to be escorted from their cell. ECF No. 9-4, ¶ 10. She reports that Plaintiff did not come to the food slot to be handcuffed. *Id.* In an effort to gain his compliance so that he could be escorted from the cell safely she deployed a one second burst of OC spray into the cell through the flood slot. *Id.*, ¶ 11; ECF No. 9-6, ¶ 7. Plaintiff used his body to block the food tray, lessening the effectiveness of the OC spray. ECF No. 9-4, ¶ 12; ECF No. 9-6, ¶ 7. Defendant Lakanse states that Plaintiff was standing against the door with a towel or cloth wrapped around his head and face. *Id.*, ¶ 12. Defendant Lakanse denies deploying any

additional OC spray into the cell (*id.*, ¶ 13) and Pfc. Adedeji denies observing Lakanse deploy any further OC spray into the cell. ECF No. 9-6, ¶ 9.

Defendant Lakanse explains that she stepped away from Plaintiff's cell to direct the secure evacuation of other inmates from the affected area and to address the flooding on the unit. ECF No. 9-4, ¶ 15. While she remained close, Plaintiff "shouted verbal threats to [her] from his cell." *Id.* ¶ 16. Pfc. Adedeji heard Plaintiff's threats. ECF No. 9-6, ¶ 10. Defendant Lakanse directed a restraint chair be brought to the unit, but it was not needed. ECF No. 9-4, ¶ 17. She also requested an OC spray cannister with a hose be brought to her because in situations where the food slot is blocked a hose may be used to attempt to deploy OC spray into the cell. *Id.*, ¶ 18. However, she did not deploy the OC spray with the hose because she could not find an opening into the cell and after she brought the canister with the hose to the cell, Plaintiff complied with orders to be handcuffed. *Id.* ¶ 19; *see also* ECF No. 9-6, ¶¶ 10, 11.

Plaintiff was taken to the recreational yard and showers for decontamination. ECF No. 9-4, ¶ 20; ECF No. 9-6, ¶ 13. Nurse Wendhim evaluated Plaintiff and cleared his return to his cell. ECF No. 9-4, ¶ 21; ECF No. 9-6, ¶ 14.

Defendant has provided the stationary camera video of the use of force. ECF No. 9-2 (filed separately). The Court has reviewed the video which begins at 05:18:11:901 p.m. At the beginning of the video an inmate is on the unit, eating in the common area: he moves quickly and appears to speak to someone off camera. *Id.* at 05:18:23.762. Defendant Lakanse and another officer entered the unit at 05:19:13.103. *Id.* When Defendant Lakanse arrived on the unit she had an OC can in her hand (*id.* at 05:19:19:754) and walked directly to Plaintiff's cell door. The other officer opened what appears to be a utility closet next to Plaintiff's cell. A third officer entered the unit and went directly to Plaintiff's cell. *Id.* The third officer opened Plaintiff's door slot at 05:19:24:154 and Defendant Lakanse immediately deployed the OC spray into Plaintiff's cell. *Id.* At this point a fourth officer had also entered the unit. *Id.* The door slot was closed at 05:19:27.354. *Id.* Before the OC spray was deployed, the officers do not appear to give Plaintiff any commands when they arrived on the unit.

The inmate who had been eating in the common area when the incident began was placed in handcuffs at 05:20:17:656 and walked off from view of the camera. *Id.*

Defendant Lakanse was given the OC can with a hose at 05:21:15:501. It appears another inmate is removed from his cell at 05:21:56.301, although the angle of that movement is

obscured by the stairs on the unit. *Id*. The inmate in the cell next to Plaintiff was removed from his cell at 05:23:21.804, and he had a cloth wrapped around his face. *Id*.

A male officer appears to speak briefly to Plaintiff through his cell door. *Id*. at 05:24:57.905. The officers next appear to ready the restraint chair that had been placed on the unit by loosening its straps. *Id*. at 05:25:49.

At 05:27:48.911 Defendant Lakanse approached Plaintiff's cell door and attempted to use the hose to deploy more OC spray into the cell. *Id*. Immediately thereafter however, Plaintiff is handcuffed through the cell door and removed from his cell. *Id*. at 05:28.24.562.

Defendant has also provided still images taken from the video. A still image taken at 05:18:12.051 shows Plaintiff standing at his cell door. ECF No. 9-10. He appears to have a cloth wrapped around his forehead. *Id*. The first photograph of the use of force, captures the video at 05:19:24.005 and shows Defendant Lakanse deploying OC spray through the door slot, while another officer stands next to her. ECF No. 9-7. An arm is visible in the cell door window, but it is unclear from the video, or the still image, whether the slot is blocked by Plaintiff. *Id*. The next photograph captures the video at 05:19:24:654 and shows essentially the same thing, although in this photograph Plaintiff appears to be closer to the cell door/window. ECF No. 9-8. The next still image from the video is taken at 05:19:25:104 and is essentially the same. ECF No. 9-9. The final still image offered from the video was taken at 05:28:52.864 and shows Plaintiff being escorted from his cell with a wrap around his forehead and a cloth around his neck. ECF No. 9-11.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

The complaint, however, does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Summary Judgment

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56€), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or

---

[2] Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

5

assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. V. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because Plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That notwithstanding, the court must also abide the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III. DISCUSSION

#### A.     Fourteenth Amendment Excessive Force

The Supreme Court held in *Kingsley v. Hendrickson* that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." 576 U.S. 389, 397 (2015). It is enough that a pretrial detainee shows that the "force purposely or knowingly used against him was objectively unreasonable," *id.*, regardless of an officer's state of mind, *id.* at 395 (cited in

6

*Dilworth v. Adams,* 841 F.3d 246, 255 (4th Cir. 2016)). Pursuant to *Kingsley,* this Court must consider whether under the "facts and circumstances" of this particular case, and from the "perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight" the force used against Plaintiff was objectively excessive. *Kingsley,* 576 U.S. at 397. This Court must also "account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.,* quoting *Bell v. Wolfish,* 441 U.S. 520, 540 (1979) (brackets in original). The *Kingsley* Court noted that a considerations such as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting" may bear on the "reasonableness or unreasonableness of the force used." *Kingsley,* 576 U.S. at 397.

The Court finds that there are material disputes of fact. While the parties do not dispute that the use of force arose because Plaintiff's cell was flooded, the evidence appears to demonstrate that the water to the cell was turned off at the time Defendant Lakanse approached Plaintiff's cell. Thus, there was no apparent urgency to enter Plaintiff's cell. Certainly, correctional staff had a need to clean up the flooding and to remove detainees from the unit but the video evidence demonstrates they were able to begin doing so prior to removing Plaintiff from his cell.

More importantly, assuming Plaintiff had been directed to submit to handcuffing over the loudspeaker, the video evidence of what occurred next is open to interpretation. Defendant Lakanse asserts that the video shows Plaintiff blocking his feed slot necessitating her deployment of OC spray. Plaintiff asserts that the video shows him at his cell door prepared to submit to handcuffing and endeavoring to explain the reason for the flooding. The video is without sound, and so what the Court is left with is a video that shows Defendant Lakanse deploying a burst of OC spray into Plaintiff's cell as soon as his door slot is opened, with no apparent direction or opportunity for him to submit to handcuffing, and without any apparent effort to temper the amount of force applied. Given Plaintiff was secured in his cell and the water to the cell was turned off, it is unclear what threat Defendant Lakanse perceived Plaintiff created.

7

Additionally, Defendant Lakanse argues that the still images taken from the video show Plaintiff covered his face in anticipation of the use of force, but in the still image taken from the video before the use of force Plaintiff appears in his cell window with an apparent wrap around his forehead, not his face. ECF No. 9-10. When he is removed from his cell, he has a wrap around his forehead and neck. ECF No. 9-11. It is unclear from the evidence before the Court if or when Plaintiff used a cloth to cover his face.

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed. 1998)). While it may be true that the still images and video do not actually depict what either party says they do, this is a debate over facts and is best reserved for the finder of facts. Thus, there remains a triable issue of fact on Plaintiff's claim alleging excessive force such that neither party is entitled to summary judgment.

### B. Qualified Immunity

Defendant argues that she is entitled to qualified immunity. Under this doctrine, "§ 1983 actions against government officials in their individual capacities" are barred "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. PAE Gov't Servs., Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)). Defendant Lakanse's qualified immunity defense is unavailing at this stage of the litigation, because Plaintiff has alleged facts suggesting that the constitutional right was well-established at the time of the incident at issue and that conduct allegedly violative of his constitutional rights actually occurred. *See Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005). Defendant Lakanse is, of course, free to reassert the defense at subsequent stages of the proceedings.

## IV. CONCLUSION

By separate order which follows, the Court DENIES Defendant Lakanse's motion to dismiss, or in the alternative, for summary judgment and DENIES Plaintiff's Motion for Summary Judgment. Counsel shall be appointed to represent Plaintiff.[3]

2-10-2026
Date

LYDIA KAY GRIGGSBY
United States District Judge

---

[3] A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1), is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel); *see also Jenkins v. Woodard,* 109 F.4th 242, 247 (4th Cir. 2024) ("…a district court must conduct a fact specific, two-part inquiry to assess whether a case presents exceptional circumstances before it decides whether to appoint counsel" including "whether the plaintiff has a colorable claim" and "considering the claim's objective complexity and the plaintiff's subjective abilities, whether the plaintiff lacks the capacity to present it." (internal quotations omitted)). Here, Plaintiff presents a colorable claim, and the Court must consider whether, given "the claim's objective complexity and the plaintiff's subjective abilities," he "lacks the capacity to present it." *Jenkins*, 109 F.4th at 247. Informing this review, the Court is mindful that summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023); *Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). Discovery will allow Plaintiff to develop further his claims and secure evidence regarding the events surrounding the use of force.